# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **LILLIE M. MIDDLEBROOKS,** : | |
| : | |
|     **Plaintiff,** : | |
| : | |
| v. : | |
| : | |
| **SACOR FIN., INC.; LAZEGA &** : | **CIVIL ACTION NO.** |
| **JOHANSON, LLC; MARK A.** : | **1:17-CV-00679-SCJ** |
| **MOORE; ROOSEN VARCHETTI &** : | |
| **OLIVER, GA PLLC; and CHERICE** : | |
| **A . TADDAY;** : | |
| : | |
|     **Defendants.** : | |
| : | |

## ORDER

This matter appears before the Court for consideration of the July 25, 2018, Report and Recommendation ("R&R") (Doc. No. [194]) in which The Honorable Justin S. Anand, United States Magistrate Judge, recommended that the Court grant Defendants' Motions for Summary Judgment (Doc. Nos. [106], [142], [170]), deny Defendant Cherice Tadday's Motions to Dismiss (Doc. Nos. [102], [122]) as moot, and deny Plaintiff's Motions for Summary Judgment (Doc. Nos. [120], [129], [137]) and her Motion for Contempt (Doc. No. [191]). Plaintiff timely filed objections to the R&R (Doc. No. [196]) and the matter is now ripe for consideration.

## I. BACKGROUND

Judge Anand laboriously waded through the morass that is the factual record in this case. See Doc. No. [194], p. 4 (describing the record as "a confusing and largely duplicative mass of paper [offered] to present the otherwise straightforward legal and factual issues in this case"). Because his recitation of the convoluted factual record is both accurate and admirably concise, and because no party objects to the underlying factual background as such,[1] the Court cites primarily to the recitation of facts found in the R&R. See id. pp. 4–17.

Plaintiff owed a debt to MBNA America Bank, NA ("MBNA"), which the company sold and transferred to Hilco Receivables ("Hilco") in 2004. Id. p. 11; see also Doc. No. [170-2], pp. 8–16. In June 2006, Hilco assigned the servicing of the debt to Columbia Credit Services, Inc., and by October of that year Columbia Credit Services, Inc. had secured a judgment against Plaintiff on the debt ("the Judgment") in a case filed in the Superior Court of Bibb County, Georgia ("the State Court Action"). Doc. No. [194], pp. 11–12; see also Doc. No. [170-2], pp. 18, 20. In 2010, the servicing rights to the debt were sold to Defendant Sacor Financial, Inc. ("Sacor"). Doc. No. [194], p. 12; see also Doc. No. [170-2], pp. 25–26.

---

[1] Plaintiff's objections to the validity of certain documents and the affidavit of John Tubbs (Doc. No. [196], pp. 15–20) are discussed below.

Defendant Mark A. Moore, an attorney with Defendant Lazega & Johanson, LLC ("L&J"), filed a "Notice of Sale and Assignment for Collection Purposes" in the State Court Action, notifying the court that "ownership of [the] Judgment ha[d] been sold to Sacor." Doc. No. [194], pp. 12–13; Doc. No. [170-2], p. 28. Moore later filed a Petition for Scire Facias to Revive Dormant Judgment ("the Sci Fa Petition") in the State Court Action. Doc. No. [194], p. 13; Doc. No. [121-3]. In February 2017, Sacor retained Roosen Varchetti & Oliver, GA PLLC ("RVO") to represent it in the State Court Action. Doc. No. [194], p. 13.

On March 1, 2017, Plaintiff filed a Motion to Set Aside the Judgment in the State Court Action. Id. pp. 13–14; Doc. No. [121-24]. While Plaintiff argued improper service and lack of subject-matter jurisdiction, she notably did not dispute the debt owed to MBNA or Sacor's ownership of that debt. See Doc. No. [121-24]. Defendant Tadday, an attorney for RVO, responded to the motion, and submitted a proposed rule nisi. Doc. No. [194], p. 14; Doc. No. [121-5]; see also Doc. No. [121-29]. The Bibb County Superior Court entered the rule nisi and served it on the parties, setting Plaintiff's motion for a hearing on May 30, 2017. Doc. No. [194], pp. 14–15; Doc. No. [121-29]. Plaintiff failed to appear for the hearing, and her motion was denied. Doc. No. [121-6]. Because Plaintiff failed to show why the Judgment should not be revived, the Bibb County Superior Court granted the Sci Fa Petition and revived the

judgment against Plaintiff in the amount of $24,034.02 in principal and $28,823.53 in interest. Id. Plaintiff appealed the order to the Georgia Court of Appeals in July 2017. Doc. No. [194], p. 15.[2]

Sacor obtained Plaintiff's credit report for "collection purposes" on eight separate occasions. Id. p. 16; see also id. p. 16 n.8. Plaintiff has never had any oral communications with Defendants Moore, L&J, Tadday, or RVO, and never applied for credit services or employment with any Defendant. See id. pp. 16–17.

Based on the above facts, Plaintiff brought two lawsuits—which have been consolidated into this single action—alleging a grand total of 176 violations of the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA"). See Doc. Nos. [1], [31].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movement is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing, by reference to materials in the record, that there is no genuine dispute as to any material fact that

---

[2] Although not decided by the time the barrage of summary judgment motions began, the Bibb County Superior Court's decision was subsequently affirmed by the Georgia Court of Appeals. See Doc. No. [198], p. 20.

should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether the moving party has met this burden, this Court must consider the facts in the light most favorable to the nonmoving party. See Robinson v. Arrugueta, 415 F.3d 1252, 1257 (11th Cir.2005).

Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. Id. All reasonable doubts, however, are resolved in the favor of the nonmoving party. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

### III.   ANALYSIS

In reviewing an R&R, the Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In her objections to the R&R Plaintiff argues that: (1) Sacor did not have a valid reason for obtaining her credit report,

(2) Defendants misrepresented ownership of the MBNA debt, and (3) Defendants engaged in abusive debt collection practices. Doc. No. [196], pp. 4–24. The Court addresses each of these arguments in turn.[3]

### 1. *Permissible Reason for Obtaining Plaintiff's Credit Report*

Plaintiff suggests that she "is not attempting to challenge the validity of the debt," but the very first argument she raises it that "the real and true Lillie Marie Middlebrooks has never obtained and/or received [an MBNA] credit card." Doc. No. [196], pp. 2–3. Although her objections are chock-full of references to a "purported" debt (see id. pp. 4, 7–8, 11, 20, 23), Plaintiff seems to recognize this case is not about whether the Judgment is valid. See id. pp. 3–4. Instead, Plaintiff contends that "when an entity purchases a pool of loans without any representations or warranties that entity cannot form a reasonable belief that the entity has the right to access consumers [*sic*] credit reports to collect the said loans [*sic*]." Doc. No. [196], p. 5.

The "review or collection of an account" is a permissible purpose for obtaining a consumer's credit report under the FCRA. 15 U.S.C. § 1681b(a)(3)(A). In order to defeat a claim under 15 U.S.C. § 1681b, a user need only demonstrate that it "had

---

[3] Plaintiff does not object to many of Judge Anand's recommendations and holdings. See Doc. No. [196], pp. 1–2. Having reviewed the portions of the R&R to which Plaintiff raises no objections, the Court finds no errors of law or fact therein.

reason to believe that a permissible purpose existed." See Carter v. MBNA Am. Bank, 2006 WL 8432582, at *2 (N.D. Ga. July 28, 2006). A company can have "reason to believe that a permissible purpose existed" even if the company made a mistake or was deliberately misled about the underlying facts. See Trikas v. Universal Card Servs. Corp., 351 F. Supp. 2d 37, 42 (E.D.N.Y. 2005) (holding that the defendant had reason to believe it had a permissible purpose despite company's own "failure to properly code the Plaintiff's account"); Kennedy v. Victoria's Secret Stores, Inc., 2004 WL 2186613, at *1–3 (E.D. La. Sept. 29, 2004) (holding that company had a permissible purpose, even though the company's employee opened a credit card in the plaintiff's name "surreptitiously and without her permission").

While Plaintiff argues that Sacor[4] never received any "representations or warranties" that the Judgment was valid, she never argues that Sacor accessed her credit report for a purpose other than "collection of an account." Doc. No. [196], pp. 5–6. Thus, it is clear that Sacor's purpose for accessing Plaintiff's credit report was permissible. See 15 U.S.C. § 1681b(a)(3)(A). Plaintiff cites absolutely no legal authority for her argument that a company must receive "representations or warranties" as to

---

[4] Plaintiff asserts that "Sacor, L&J, and Moore" lacked a permissible purpose for obtaining her credit report, but no evidence in the record indicates that any Defendant other than Sacor obtained Plaintiff's credit report. See Doc. No. [196], p. 4; Doc. No. [194], p. 16. In any event, the analysis is the same.

7

the validity of a judgment in order to have reason to believe the judgment is valid. See id. pp. 5–6.

Once a judgment is issued, every court in the nation is required to give it "the same credit, validity, and effect," regardless of any representations or warranties. See Thomas v. Washington Gas Light Co., 448 U.S. 261, 270, 100 S. Ct. 2647, 2655, 65 L. Ed. 2d 757 (1980) (quoting Hampton v. McConnel, 16 U.S. 234, 235, 4 L. Ed. 378 (1818)). Courts, such as this one, are entitled to take judicial notice of the Judgment "for the limited purpose of recognizing the 'judicial act' that the order represents." United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994). Given these legal principles, it would be nonsensical to hold that Sacor could not rely on the facial validity of the Judgment unless it received "representations or warranties." As Judge Anand correctly pointed out, there is no evidence that Defendants had any reason to doubt the validity of the Judgment. See Doc. No. [194], pp. 44–48

Plaintiff next argues that Sacor did not have a reasonable belief that it could obtain Plaintiff's credit report in conjunction with "collection of an account," because Defendants did not follow the procedures for filing a chose in action. Doc. No. [196], pp. 6–8. This argument is irrelevant because Defendants filed a petition for scire facias, not a chose in action. See Doc. No. [121-3]; see also O.C.G.A. § 9-12-62 ("Scire

facias to revive a judgment is not an original action but is the continuation of the action in which the judgment was obtained.").

Plaintiff also argues that Sacor did not have a reasonable belief that it could access her credit report because it does not qualify as a creditor under the FDCPA or the Fair and Accurate Credit Transactions Act ("FACTA")—an amendment to FCRA. See Doc. No. [196], pp. 8–10. None of the authority cited by Plaintiff supports this position. Although the issue has not been directly addressed by the Eleventh Circuit, a wide array of persuasive authority suggests that an entity does not need to be an original creditor in order to obtain a consumer's credit report. See, Huertas v. Galaxy Asset Mgmt., 641 F.3d 28, 34 (3d Cir. 2011) (recognizing that debt collector may obtain credit reports to collect on delinquent accounts); Miller v. Wolpoff & Abramson, LLP, 309 Fed. App'x 40, 43 (7th Cir. Feb. 5, 2009) (collection agency obtaining credit report on behalf of debt's owner had a legitimate purpose under FCRA); Edge v. Prof'l Claims Bureau, Inc., 64 F. Supp. 2d 115, 118 (E.D.N.Y. 1999) (same); Korotki v. Attorney Servs. Corp. Inc., 931 F. Supp. 1269, 1277-78 (D. Md. 1996) (same). As Judge Anand correctly held, nothing "in the FCRA or FDCPA prohibits a debt collector from obtaining a consumer report to collect a debt on behalf of a creditor." Doc. No. [194], p. 43.

AO 72A
(Rev.8/82)

Finally, Plaintiff contends that "to meet the definition of an assignee under the FCRA, the assignee must receive an assignment from the original creditor." Doc. No. [196], pp. 9–11. This is, in a sense, correct. But Plaintiff reads too much into the FACTA definition when she argues that the assignee must purchase the debt directly from the original creditor. See id. p. 10. Instead, the statute covers "**any** assignee of the original creditor." 15 U.S.C. § 1691a(e) (emphasis added). Such language would be superfluous if there could only ever be one assignee of a debt. Giving the term "assignee" its ordinary legal meaning, it covers all entities within the chain of assignments, no matter how many steps removed from the original creditor. See, e.g., In re Walston, 606 F. App'x 543 (11th Cir. 2015) (holding that claimant showed valid chain of assignments from original creditor to another assignee and then to claimant).

## 2.     *Whether Defendants Misrepresented Ownership of the MNBA Debt*

Plaintiff next argues that Defendants misrepresented that Sacor owned the MNBA debt. Doc. No. [196], pp. 11–22. Plaintiff's argument focuses on what a debt collector must show to prove ownership in a debt collection lawsuit. Id. pp. 12–15. But Defendants did not file a debt collection lawsuit against Plaintiff. Rather, by the time they became involved in the State Court Action, a judgment had already been entered against Plaintiff. Plaintiff cites no authority for the notion that an entity that owns the right to collect on a facially valid judgment must prove ownership of the

underlying debt in order to collect on the judgment. See id. pp. 12–15. Moreover, this case is not a debt collection lawsuit, and Defendants' evidentiary burden in defending Plaintiff's FDCPA and FCRA claims are not the same.

In any event, Plaintiff's argument hinges entirely on a faulty objection to the admissibility of documents Defendants did provide to demonstrate ownership. See id. pp. 15–22. She first argues that the assignment of the MBNA debt cannot be admitted as a business record because it is made "without representations or warranties." Doc. No. [196], pp. 15–17; see also Doc. No. [170-2], p. 8. But she cites no legal authority in support of her argument that the lack of specific representations and warranties "indicat[es] a lack of trustworthiness." See Doc. No. [196], pp. 15–17. Likewise, she provides no authority for her argument that a business record cannot be "type[d] up on a plain sheet of white paper," nor her argument that a business record must contain "the title, address, and phone number of the person who signed [it]." See id. p. 17. Finally, she cites no authority in support of her argument that an assignment cannot be a business record if (1) the debt is sold "with all faults," (2) the assignment contains an indemnification clause, and (3) the assignment contains redactions as to the purchase price. See id. 19–20.

The Court will not disregard documents in the record unless the party challenging that evidence demonstrates that the material "**cannot** be presented in a

11

form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2) (emphasis added). As Judge Anand correctly concluded, Defendants have met the light burden of admissibility imposed at summary judgment. See Doc. No. [194], pp. 9–10. What's more, Plaintiff's arguments completely ignore Judge Anand's holding that the assignments and contracts need not qualify as business records in order to be admissible. See Doc. No. [194], pp. 8–9. Other than her conclusory arguments about the (in)admissibility of the assignments and contracts, Plaintiff offers no argument as to how Defendants allegedly misrepresented Sacor as the owner of the MBNA debt. See Doc. No. [196], pp. 11–22.

### 3. *Whether Defendants Engaged in Abusive Debt Collection Practices*

Finally, Plaintiff argues that a "reasonable" juror could conclude that Defendants "intended to annoy, abuse, or harass Plaintiff" because Plaintiff sent "a 30-page brief discussing all Georgia case law for meeting the burden to prove ownership of a purported consumer debt." Doc. No. [196], p. 23. Because Plaintiff cites nothing in the record to support her assertion, the Court has no idea what supposed brief she is referring to. See Doc. No. [197], p. 3 (noting that "this brief is not an exhibit to any of the myriad of summary judgment papers"). The only thing Plaintiff filed in the State Court Action, that the Court is aware of, was the Motion to Set Aside, which is 12 pages and does not discuss the burden of proving ownership

12

of a consumer debt. Doc. No. [121-24]. If Plaintiff **did** actively litigate whether Sacor was the owner of the debt during the State Court Action, then the doctrine of collateral estoppel would bar many of her arguments in this case. Deweese v. Town of Palm Beach, 688 F.2d 731, 733 (11th Cir. 1982).

If Plaintiff is **not** referring to a brief she filed in the State Court Action, her argument makes even less sense. Plaintiff's complaint necessarily does not contain claims based on conduct that occurred **after** this suit was filed. As Defendants RVO and Tadday point out, Plaintiff's complaint does not allege Defendants ignored a brief discussing the burden for proving Sacor's ownership of the debt. See Doc. No. [197], pp. 2–3. Instead, she alleged Defendants ignored her brief discussing subject-matter jurisdiction. See Doc. No. [31], pp. 9–10, ¶¶33–37. Plaintiff cannot wait until summary judgment has been fully briefed to suddenly change her theory of the case. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004). Moreover, the fact that Defendants have defended themselves in this case is not "abusive" conduct toward Plaintiff.

There is no evidence in the record that, during the State Court Action, Defendants were made aware that Plaintiff would argue Sacor did not own the debt at issue. Defendants did not engage in "abusive" or "harassing" conduct simply because they did not anticipate an argument Plaintiff had not made. Moreover,

13

nothing about the FDCPA requires Defendants to agree that Sacor has no evidence it is the owner of the debt just because Plaintiff (incorrectly) argues that it is so. "If the filing of a lawsuit does not have the natural consequence of harassing, abusing, or oppressing a debtor, surely a simple oppositional statement does not represent the type of coercion and delving into the personal lives of debtors that the FDCPA in general, and § 1692d in particular, was designed to address." Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291, 1305 (11th Cir. 2015)(alteration and quotation marks omitted).

The "least sophisticated consumer" analysis still caries a component of objective reasonableness to "prevent[ ] liability for bizarre or idiosyncratic interpretations." LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1194 (11th Cir. 2010) (quoting United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996)). No reasonable consumer, even the least sophisticated consumer, would view Defendants' conduct in the State Court Action as being harassing, abusive, or oppressing. See Miljkovic, 791 F.3d at 1305.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's objections to the R&R (Doc. No. [196]) are **OVERRULED**, and the R&R (Doc. No. [194]) is **ADOPTED** as the order of the Court. Defendants' Motions for Summary Judgment (Doc. Nos. [106], [142], [170]) are **GRANTED**. Defendant Cherice Tadday's Motions to Dismiss (Doc. Nos. [102], [122])

14

are **DENIED as moot**. And Plaintiff's Motions for Summary Judgment (Doc. Nos. [120], [129], [137]) and her Motion for Contempt (Doc. No. [191]) are **DENIED**.

**IT IS SO ORDERED,** this 15th day of August, 2018.

s/Steve C. Jones
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE